961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harry N. LEWIS, Eugene Vaughn, Defendants-Appellants.
 Nos. 91-3530, 91-3726.
 United States Court of Appeals, Sixth Circuit.
 April 30, 1992.
 
 Before MERRITT, Chief Judge, and BOYCE F. MARTIN, Jr. and SILER, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Defendants Harry N. Lewis and Eugene Vaughn were convicted of possession with intent to distribute and conspiracy to distribute in excess of five grams of crack cocaine. Lewis was sentenced to 84 months and Vaughn to 72 months incarceration. Vaughn challenges his conviction on three grounds: (1) insufficient evidence to prove conspiracy; (2) insufficient evidence to show intent to distribute the cocaine possessed; and (3) violation of the defendant's Sixth Amendment right to confront witnesses. Lewis does not appeal his conviction, but appeals a two level enhancement of his sentence for possession of a dangerous weapon during the commission of a drug offense. For the reasons that follow, we affirm the judgments of the District Court as to both defendants.
 
 Facts
 
 2
 The arrests that culminated in the convictions of Lewis, Vaughn, and their co-conspirator, Charles Harris,[1] resulted from a raid on a Columbus, Ohio crack house by the Columbus Police Department. On October 3rd and 4th, 1990, the Narcotic Unit set up a series of controlled buys through a confidential informant. Immediately following the third in the series of buys, a SWAT team raided the residence pursuant to a valid search warrant.
 
 
 3
 The officers searched the residence and recovered an unspecified amount of cocaine, but at least 14.3 grams. The police found papers indicating that Harris was the lessee of the apartment, a triple beam scale, a cutting block, and other drug paraphernalia. In addition, police found a .32 caliber handgun under the cushions of the living room sofa and twelve .32 caliber shells in the kitchen.
 
 
 4
 Although at least ten persons were on the premises at the time of the raid, the police apparently only arrested Harris, Lewis, and Vaughn. The police found both Harris and Lewis in the kitchen. Vaughn was caught after attempting to flee through the front door. Lewis had over $200 in his possession, and Harris had more than $500. More cash was found in the living room. Vaughn had no money on his person, but police recovered a bottle containing approximately 52 unit doses of crack cocaine (9.07 grams) which they saw him discard.
 
 
 5
 Only one person, Milton Tabler, was in the living room at the time of the raid. The gun was located under the sofa cushions near where he was seated. The police apparently did not run a fingerprint test on the gun, but a registration check showed it to be registered to a Lewis Johnson, an unknown, unindicted individual. Tabler was not arrested and was not alleged to be part of the conspiracy.
 
 I. Lewis
 
 6
 Lewis argues that the District Court erred in imposing a two level enhancement under Guidelines § 2D1.1(b)(1) for possession of a firearm during a drug offense. For § 2D1.1(b)(1) to be applicable to Lewis, the government need only demonstrate that some member of the conspiracy possessed the firearm, that the possession was during the commission of the offense, and that the member's possession was reasonably foreseeable to Lewis. United States v. Sanchez, 928 F.2d 1450 (6th Cir.1991). Lewis acknowledges that possession by a co-conspirator may be imputed to the defendant under Guidelines § 1B1.3(a)(1), but disputes the finding by the trial court that a co-conspirator possessed the weapon discovered in the crack house during the raid.[2]
 
 
 7
 Lewis points out that no member of the conspiracy was in actual possession of the firearm at the time of the raid, so possession was constructive at best. Lewis argues that constructive possession does not exist here because of the lack of dominion or control over the weapon and the premises. He points out that several other persons were in the apartment at the time of the raid and that Milton Tabler, a person not alleged to be a member of the conspiracy, was the closest person physically to the gun.
 
 
 8
 If the police had found only the gun in the apartment and could not establish a connection between the gun and any member of the conspiracy, Mr. Lewis's argument would be persuasive. Here, however, the police also found shells fitting the gun in the kitchen, as well as evidence that Harris, a convicted co-conspirator, was the lessee of the apartment and presumably resided there. Taken together, this evidence suggests, and the District Court found, that the gun belonged in the apartment and was not secreted away by a customer, but by Mr. Harris or another member of the conspiracy.[3]
 
 
 9
 The standard of review on the issue of possession is whether the District Judge's finding is clearly erroneous. Although the evidence is tenuous, the fact that police found shells in the kitchen matching the weapon found in the living room, does support the District Court's finding. Foreseeability of possession of a weapon by a co-conspirator has not been challenged, but this Court has upheld sentence enhancement where a co-conspirator kept a gun underneath the seat of his car during a drug transaction without the appellant's knowledge. United States v. Christian, 942 F.2d 363 (6th Cir.1991). The Court found that it was reasonably foreseeable that a co-conspirator would have a gun readily accessible during a drug transaction. Id. Although the foreseeability in Christian was in part determined by the large amount of money involved in the transaction, it is reasonable to believe that the proprietor of a crack house would also keep a weapon on hand to protect himself and his drugs from the customers' comings and goings to and from the premises. Therefore, the court's enhancement of Lewis's sentence on this basis is not clearly erroneous.
 
 II. Vaughn
 
 10
 Vaughn asserts that the District Court impermissibly limited his cross-examination of the Government's witness, Steve Gilliam, a confidential informant. Vaughn argues that by limiting cross-examination with respect to the informant's aliases and other cases the informant worked on with the Government, the Court effectively denied Vaughn his Sixth Amendment right to confrontation. The Government states that the District Judge only limited questions when it was obvious that the safety of the witness or the status of other cases he was currently working on might be endangered by the information that would be elicited.
 
 
 11
 Vaughn's challenge to the District Court's limitation of the cross-examination of the government's witness is not persuasive. Although the Court placed some limits on the scope of cross-examination, the record shows that the defense was given sufficient latitude to elicit evidence of bias or lack of credibility.
 
 
 12
 Vaughn also asks this Court to reverse his conviction on the grounds that there was insufficient evidence to convict the defendant of conspiracy or to prove that he intended to distribute the drugs in his possession at the time of the raid. Vaughn argues on appeal, as he did at trial, that the only evidence linking him to the conspiracy is his presence on the scene, and that this is insufficient to sustain a conviction.
 
 
 13
 The sufficiency of the evidence arguments are also meritless. The defendant argued unsuccessfully at trial that he was not a dealer, but only a user of crack. Government witnesses testified, however, that Vaughn attempted to sell crack to the informant. Government agents also saw Vaughn discard a vial containing 52 doses of crack which comprised more than half of all the drugs found on the premises during the raid. The defendant argues that there is no evidence to show that this was not for personal use; however, the large number of doses and the testimony that Vaughn offered to sell crack to the informant support his conviction.
 
 
 14
 For the foregoing reasons, we AFFIRM the judgments of the District Court.
 
 
 
 [1]
 Mr. Harris is not a party to this appeal
 
 
 [2]
 In response to Lewis's challenge to enhancement of his sentence on the gun charge, District Court Judge James L. Graham responded:
 I have considered your arguments and I have read the case. In this case, I believe the evidence indicates that the gun was present as part of the drug conspiracy, that it was in a strategic location, namely on the sofa or under the sofa when they found it near the door, that it is probable that it was there to be used by that member of the drug conspiracy, that person whose job it was to control the door, and that it was there to be used to protect the drug operation and to protect the individuals engaged in the drug operation and to protect their drugs and money, and that the defendant, as a member of the conspiracy, is charged with actual or constructive possession with all of those who participate in the conspiracy; that is he would be charged with the doorman's possession of the gun as part of the operation of the conspiracy.
 Sentencing Hearing Transcript, at 7 (emphasis added). The Court proceeded to find that the presence of the gun was either known or reasonably foreseeable to the defendant.
 
 
 [3]
 This analysis goes only to enhancement of the defendant's sentence under the Guidelines. At the Sentencing Hearing the Government conceded that the evidence was insufficient to prosecute the Defendant separately on a gun possession charge under 18 U.S.C. § 974(c)(1). Sentencing Hearing Transcript, at 11. Enhancement factors, unlike the substantive offense under § 924, need not be proved beyond a reasonable doubt